## STATEMENT OF OFFENSE

I, David E. Johnson, Special Agent with the Federal Bureau of Investigation ("FBI"), Washington Field Office, Washington, D.C. (hereinafter Affiant"), being duly sworn, deposes and states as follows:

## INTRODUCTION

1. I am a Special Agent and currently employed by the Federal Bureau of Investigation (FBI) since March 2017. My formal education includes a Bachelor of Science Degree in Business Management from Hampton University, Virginia, and a Master of Justice Administration degree from Faulkner University, Alabama. From March to July 2017, I attended the FBI Basic Field Training Course Academy at Quantico, Virginia. During this time, I received formalized training in various investigative techniques required of every Special Agent candidate before becoming a Special Agent with the FBI. Following my successful completion of the FBI Academy, I was assigned to the FBI's Washington Field Office Cross-Border Safe Street Task Force – Squad CR-1. Safe Streets Task Force is responsible for combating gangs and violent drug crews in Washington, DC and Prince George's County, MD. Specifically, CR-1's investigative responsibilities include Firearms Act violations, Racketeering Enterprise Investigations – Gangs (92D), Interstate Transportation in Aid of Racketeering, Racketeer Influenced Corrupt Organization, Violent Gangs, and Organized Crime Drug Enforcement – Violent Gangs. I have conducted or participated in physical and electronic surveillance, assisted in the execution of search warrants, debriefed informants and reviewed other pertinent records. Through my training, education, and experience, I have become familiar generally with the efforts of persons involved in criminal activity to avoid detection by law enforcement. I am assigned to conduct investigations that typically pertain to violations of Title 18 of the United States Code.

Case No. 1:18-mj-120
Assigned to: Magistrate Judge Robin M. Meriweather
Date Assigned: 09/28/2018
Description: Criminal Complaint

2. Prior to becoming a Special Agent, I was a Police Officer with the Hampton Police Division from 2012 until 2017. I attend basic police academy training from January 2013 until June 2013, and testified on behalf of the Commonwealth of Virginia in the prosecution of local and State code violations. I have received training in the field of narcotics enforcement. I have attended numerous drug and gang investigation training courses administered by other law enforcement agencies and related professional organizations. I have participated in all aspects of narcotics investigations from street-level distributors to large-scale trafficking organizations. I have received training and have gained experience investigating criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute controlled substances, including marijuana, methamphetamine, cocaine, heroin, and other controlled substances and precursor materials. From my training and experience, I have become familiar with the techniques and methods utilized by drug distributors.

3. This affidavit is based upon information witnessed by your affiant, or provided to me by other law enforcement officers/agents, other law enforcement investigators, government specialists and witnesses. Because this affidavit is being submitted for the limited purpose of securing a Criminal Complaint and Arrest Warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause for the issuance of a Criminal Complaint and Arrest Warrant.

**PROBABLE CAUSE**

4. Your affiant is currently participating in a long-term investigation concerning a large-scale narcotics trafficking organization based in the Northeast quadrant of Washington, D.C. During the investigation, DERRICK BOYD, also known as "Fat Derrick," was identified as a leader and supplier of a drug trafficking organization based in the 300 block of 18th Place, N.E.,

Washington, D.C. During the course of the investigation, law enforcement utilized an undercover officer (hereafter "UC") to make a series of controlled purchases of illegal narcotics from BOYD. As discussed below, the UC conducted seven controlled purchases from BOYD in the District of Columbia on the following dates: October 24, 2017; November 8, 2017; December 12, 2017; January 24, 2018; February 7, 2018; March 13, 2018; and April 10, 2018.

5. In addition, between March 7, 2018, and the present, law enforcement have received several authorizations to intercept wire and electronic communications over four different cellular telephones utilized by BOYD and authorization to intercept wire communications over one cellular telephone utilized by BOYD. Specifically, on March 7, 2018, and April 5, 2018, the Court issued orders authorizing the interception of wire and electronic communications to and from Target Telephone #4 (TT-4) (202-491-8351), a cellular telephone utilized by BOYD. Interceptions began on March 7, 2018, and continued until April 8, 2018, when the FBI assessed that BOYD had primarily stopped using TT-4 for criminal activity and that he had begun using Target Telephone #6 (TT-6) (202-491-7306). Interceptions began on April 19, 2018, and continued until May 11, 2018, when the FBI assessed that BOYD had primarily stopped using TT-6 and that he had begun using Target Telephone #7 (TT-7) (202-910-2831) for criminal activity. Interceptions began on June 1, 2018 and continued through June 30, 2018. Interceptions renewed on July 3, 2018 and continued through August 1, 2018. Interceptions renewed on August 15, 2018 and continued through September 4, 2018, when the FBI assessed that BOYD had primarily stopped using TT-7 and that he had begun using Target Telephone #10 (TT-10) (202-749-3516) for criminal activity. Interceptions began on September 21, 2018, and are presently ongoing.

6. On September 28, 2018, at approximately 12:11 p.m. (TT-10, <u>Activation #1961</u>), BOYD placed an outgoing call from TT-10 to "AKH" on 310-554-9223. During the course of the

call, AKH stated, "I was about to get from him what I'm about to give you, though – the 2-5-0. That cool?" BOYD replied, "You said, 2-5-0?" AKH replied, "Yeah" BOYD responded, "Alright. That's a bet, just hit me when you are ready." Based on training and experience, your affiant understands that AKH informed BOYD that AKH was going to obtain and provide BOYD with 250 grams of narcotics.

7. Following this conversation, law enforcement intercepted subsequent conversations between BOYD on TT-10 and "AKH" on 310-554-9223. During the course of these conversations, BOYD and AKH agreed to meet near the Stadium/Armory Metro Station on 19th Street, S.E., at a set time.

8. At that location, at the agreed upon time, law enforcement observed a black Hyundai sedan arrive at the location, and JOHN DOE exited the vehicle. Law enforcement observed JOHN DOE for a period of time and observed JOHN DOE utilizing a cell phone. In addition, law enforcement intercepted a phone call from BOYD on TT-10 to JOHN DOE on 310-554-9223 at the same time that JOHN DOE was observed using the cell phone.

9. Law enforcement then approached JOHN DOE, who was by his vehicle. Law enforcement briefly detained JOHN DOE, while a law enforcement officer placed a call to 310-554-9223. At that time, law enforcement heard a cellphone ring inside the black Hyundai. Law enforcement then conducted a search of the vehicle. During the course of the search, law enforcement located the approximately 254 grams of a white rock-like substance suspected of being cocaine base (crack cocaine) secreted near the center console. Directly beneath the suspected cocaine base, law enforcement agents located the following: Smith & Wesson M&P Bodyguard .380 caliber semi-automatic firearm, bearing serial KEP8502, containing no round in chamber, and 4 rounds of .380 ammunition in the magazine. The suspected crack cocaine field-

tested positive for the presence of cocaine; however, based on your affiant's training and experience, it is consistent with the appearance of cocaine base.[1]

10. Law enforcement officers placed the defendant under arrest based on probable cause that the defendant unlawfully possessed with the intent to distribute 28 grams or more of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B)(iii), and unlawfully.

11. Based on the information contained in this Affidavit, your affiant submits that there is probable cause to believe that, JOHN DOE did unlawfully, knowingly and intentionally possess with intent to distribute mixtures and substances containing a detectable amount of cocaine and cocaine base, also known as crack, Schedule II narcotic drug controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B)(iii). In addition, your affiant submits that there is probable cause to believe that, JOHN DOE did unlawfully and knowingly use, and carry during and in relation to, and possess a firearm, that is, a Smith and Wesson .380 caliber semi-automatic pistol, in furtherance of, a drug trafficking offense.

---

[1] Your affiant notes that the field-test kits readily available to Special Agents do not differentiate between cocaine hydrochloride (powder cocaine) and cocaine base (crack cocaine). Rather, the field-test kits merely test for the presence of cocaine.

5

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
David E. Johnson, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me
this ____ day of September, 2018.

_____
The Honorable Robin M. Meriweather
Magistrate Judge for the District of Columbia